UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TOBY DONICA | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL NO. 3:17-cv-102 |
| | § | |
| NOBLE SERVICES | § | |
| INTERNATIONAL LIMITED, | § | |
| NOBLE CORPORATION, | § | |
| NOBLE DRILLING SERVICES INC., | § | |
| NOBLE DRILLING (U.S.) LLC, | § | |
| NOBLE INTERNATIONAL LIMITED, and | § | |
| PARAGON OFFSHORE | § | |
| DRILLING, LLC. f/k/a | § | |
| NOBLE DRILLING CORPORATION | § | |
| | § | *Jury Trial Requested* |
| Defendants. | § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COMES, **TOBY DONICA**, hereinafter referred to as Plaintiff, and files this, his Original Complaint, against **NOBLE SERVICES INTERNATIONAL LIMITED, NOBLE CORPORATION, NOBLE DRILLING SERVICES INC., NOBLE DRILLING (U.S.) LLC, NOBLE INTERNATIONAL LIMITED, and PARAGON OFFSHORE DRILLING, LLC. f/k/a NOBLE DRILLING CORPORATION** (collectively "Defendants"

or "Noble Defendants") and in furtherance thereof would respectfully show unto this Court the following:

## I.
## PARTIES

1.01  Plaintiff is a US Citizen and an adult resident of Waco, McLennan County, Texas, USA.

1.02  Defendant **NOBLE SERVICES INTERNATIONAL LIMITED** is a foreign business entity authorized to and doing business in this District, Division, and in the State of Texas for the purpose of accumulating monetary profit, and may be served at its home office 13135 S. Dairy Ashford, Suite 800 Sugar Land, Texas 77478.

1.03  Defendant **NOBLE CORPORATION**, is a foreign corporation authorized to do and doing business in this District, Division and the State of Texas for the purpose of accumulating monetary profit, and maybe served with process at its home office 13135 S. Dairy Ashford, Suite 800, Sugar Land, Texas 77478, in accordance with Rule 4(h) Fed.R.Civ.P.

1.04  Defendant **NOBLE DRILLING SERVICES INC.,** is a Delaware corporation with its principal place of business in this District, authorized to do and doing business in this District, Division, and the State of Texas for the purpose of accumulating monetary profit with its home office at 13135 S. Dairy Ashford, Suite 800, Sugar Land, Texas 77478, and may be served

with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201, in accordance with Rule 4(h) Fed.R.Civ.P.

1.05   Defendant **NOBLE DRILLING (U.S.) LLC,** is a Delaware limited liability company with its principal place of business in this District, authorized to do and doing business in this District, Division, and the State of Texas for the purpose of accumulating monetary profit, with its home office at 13135 S. Dairy Ashford, Suite 800, Sugar Land, Texas 77478, and may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201, in accordance with Rule 4(h) Fed.R.Civ.P.

1.06   Defendant **NOBLE INTERNATIONAL LIMITED,** is a foreign business entity authorized to do and doing business in this District, Division and the State of Texas for the purpose of accumulating monetary profit, and may be served with process at its home office 13135 S. Dairy Ashford, Suite 800, Sugar Land, Texas 77478, in accordance with Rule 4(h) Fed.R.Civ.P.

1.07   Defendant **PARAGON OFFSHORE DRILLING, LLC. f/k/a NOBLE DRILLING CORPORATION,** is a Delaware corporation authorized to do and doing business in this District, Division and the State of Texas for the purpose of accumulating monetary profit, with its home office at 1351

Briarpark Drive, Suite 700, Houston, Texas 77042, and may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201, in accordance with Rule 4(h) Fed.R.Civ.P.

## II.
## JURISDICTION AND VENUE

2.01   This Court has jurisdiction over the matter, and the Defendants pursuant to 28 USC §1332(a)(1) as there is complete diversity of the parties and the amount in controversy is over $75,000.00 as well as federal question jurisdiction pursuant to 28 USC §1331.

2.02   The Court has jurisdiction over the lawsuit under 28 U.S. C. § 1333 because the suit involves admiralty and maritime jurisdiction. This case is brought pursuant 28 U.S. C. § 1333, the general maritime law, and the Jones Act now codified at 46 U.S.C. § 30104.

2.03   Venue is proper in this matter pursuant to the admiralty and maritime laws of the United States, Rule 82 Fed. R. Civ. P.

2.04   This Court also has jurisdiction over the federal claims of the plaintiff in this action pursuant to 28 U.S.C. §1331, because the subject matter of Plaintiff's claims are premised on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, and can exercise supplemental jurisdiction over any and all state law claims for violations of the Texas Labor Code.

2.05   Prior to instituting this suit, Plaintiff filed administrative claims with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC") alleging sexual harassment and retaliation.

2.06   The EEOC issued a right-to-sue letter dated February 3, 2017. This Complaint is filed within 60 and 90 days after receipt of said letter.

2.07   Suit is filed here based upon the protections afforded in Title VII of the 1964 Civil Rights Act, as amended, Sec. 703(a)(1) 42 USC §2000e-2(a)(1), Sec. 704 42 USC §2000e-3(a) and the Texas Labor Code §21.001, *et. seq*.

## III.
## FACTS

3.01   At all times material hereto, the Defendants owned, operated and/or crewed the *Noble Houston Colbert* ("*NHC*"), a cyber jackup rig. Donica was contracted through a United States office of the Noble Defendants and was stationed on the *NHC* in Singapore from October 2013 to January 2014. At all times, Donica was a US employee contracted by the US office of a company traded on US stock markets to perform work wherever in the world he was assigned, even in US waters. The *NHC* has approximately 150 crew members of which approximately 75% are US workers. Donica's immediate

supervisor was Byron Manuel, a US Citizen and Resident. His supervisor was Mark Ryals, a US Citizen and Resident.

3.02   In January 2014, the *NHC* was transported to Argentina off the coast of Tierra Del Fuego.

3.03   Donica was assigned to work as an Electronic Technician on the *NHC* and was a member of its crew working a hitch of 28 on/28 off and was returned to his base of Houston (or Waco), Texas, USA following each hitch.

3.04   The Noble Defendants contracted to perform drilling services for Total Austral, S.A. Total Austral, S.A. contracted with Brings Austral, S.A. to assign Argentinian workers to also perform drilling services under the control of the Noble Defendants. At all times, the Noble Defendants had control of all persons on the *NHC*. The Noble Defendants had policies and procedures stating that they would not tolerate sexual harassment or retaliation, but failed to train workers/employees on the *NHC* and failed to ensure that their policies were followed such that the policies and procedures were ineffectual to prevent or correct harassment and to protect employees, like Donica, from retaliation. In addition, the Noble Defendants allowed and encouraged a sexually-charged culture such that it permeated the working atmosphere and adversely affected the terms and conditions of employment.

3.05   Two of the Brings Austral, S.A.-assigned union members working for the Noble Defendants were Maximiliano Soler ("Soler") and Damian Gomez ("Gomez"). Soler and Gomez were subject to Noble Human Resources, Nobel policies and procedures and all rules and duties of Noble Defendants.

3.06   Nevertheless, and as a result of failure to train and supervise, on multiple occasions Soler and Gomez touched Donica in a sexually suggestive and inappropriate manner on the *NHC* – this was assault of a sexual nature to this US-based employee – and was unwelcome harassment. In the changing room between shifts, and at other times, Soler and Gomez routinely grabbed Donica's buttocks, penis and other portions of his body and laughed about it. When Donica would say no and resist, these employees would gang up on him and grab his rear and penis. This grabbing would also occur while riding on elevators and was a pervasive daily occurrence. In addition, the sexual harassment occurred in the form of kissing sounds, cat-calling and facial expressions indicating sexual interest as well as in other forms.

3.07   On one final occasion, on January 27, 2016, Soler and Gomez touched Donica's penis again. Donica on January 28, 2016 again reported the harassment to Mark Ryals.

3.08   Donica asked that his reporting be confidential and that Ryals and Ryals' supervisor were told that Donica wanted the reporting to be confidential due

to the fear of retaliation. Donica further asked that any action, if taken as to Soler and Gomez, be taken while they were off the rig in order to avoid trouble and retaliation. Instead, Soler and Gomez were reprimanded while on board and while Soler, Gomez and Donica were all on board together.

3.09   The reports of sexual assault were substantiated by Noble Drilling. Noble Drilling provided a written reprimand for Soler and Gomez and was to have both removed from the *NHC* by Ryals. Ryals met with both Soler and Gomez who refused to sign the disciplinary notices and they claimed the sexual assault was a joke and was funny. The method and timing of Soler and Gomez's reprimands assured retaliation against Donica.

3.10   Total Austral, with whom the Noble Defendants were contracted, refused to remove the assaulting employees from the Noble rig also asserting that the sexual harassment was a joke.

3.11   The Noble Defendants, although acknowledging the sexual harassment was improper and illegal, tried to get Donica to say that the treatment he had received was just 'horseplay'.

3.12   Brings Austral, S.A., as a union, supported the two sexual harassers. The Brings Austral, S.A. workers employed by and under the control of the Noble Defendants then went on strike. To end the strike for the benefit of Noble Defendants and their financial well-being, Noble Defendants removed

Donica from the rig. *NHC* later assigned Donica to the *Noble Sam Hartley* claiming it was for Donica's benefit to re-assign him and to instead leave the harassers on board the *NHC*.

3.13  Employees of Total Austral were concerned enough for Donica's safety, that they recommended that the Noble Defendants call the Coast Guard to protect Donica from harm.

3.14  Because of the harm he had undergone and the failure of the Defendants to train, supervise and terminate the sexual harassers, Donica experienced a great deal of unwelcome conduct and fear, such that the vessel was unsafe and unseaworthy.

3.15  On January 29, 2016, Donica was airlifted from the rig by helicopter and upon arrival in Rio Grande was flown by the Noble Defendants to Waco, Texas, USA.

3.16  Donica took Family and Medical Leave Act ("FMLA") leave under US laws which was approved by the Noble Defendants. On the conclusion of his leave, he was terminated from his employment.

# IV.
# JONES ACT

4.01  It became necessary to bring this suit by reason of the serious and permanent injuries sustained by Plaintiff in December 2015 to the date of his termination from employment. At the time of the injuries made the basis of

this suit, Plaintiff was aboard the vessel as a member of the crew, and was working in the course and scope of his employment.

4.02    This suit is, therefore, instituted under and controlled by the terms and provisions of Title 46, United States Code Annotated, Section 30104 and following, commonly referred to as the "Jones Act," incorporating the Federal Employers' Liability Act, and under general maritime law.

4.03    Plaintiff would show that nothing he did or failed to do on the occasion in question caused or in any way contributed to cause his injuries.  To the contrary, the occurrence in which Plaintiff was injured and the injuries he sustained were proximately caused by the negligence, as that term is understood in law, by the Defendants, their agents, servants and employees, who were acting in the course and scope of their employment for the Defendants at all times material to this action.

4.04    Defendants owed to Plaintiff a duty to furnish him a safe place to work and a seaworthy vessel.  As applied to Plaintiff, the Defendants failed in those respects and such unseaworthiness of the vessel in question caused and resulted in the injuries and damages sustained by Plaintiff.  These conditions were brought about and caused by the Defendants.

4.05   Plaintiff would show that the above-described incident was proximately caused by the negligence of the Defendants.  The Defendants breached their legal duties and such breaches caused damages and injuries to your Plaintiff.

4.06   Plaintiff would show that the Defendants were negligent through their acts and omissions, jointly and severally, and by and through their agents, servants, and/or employees, acting in the course and scope of their respective employments, individually and/or collectively. Further, Plaintiff was acting under specific orders at the time of the incident, which proximately caused his injuries.

## V.
## MAINTENANCE AND CURE

5.01   By reason of the contractual relationship between Plaintiff as a member of the crew of the vessel and the Defendants, Plaintiff is entitled to recover maintenance and cure from the Jones Act employer for such time as he has been and will be either convalescing from his injuries under medical care or until reaching his maximum improvement.  This suit is, therefore, also maintained for maintenance and cure for which the Defendant Jones Act employer is obligated to Plaintiff.

5.02   Thus far, the Jones Act employer has willfully chosen not to pay maintenance and cure in a timely fashion.  The vessel owner has an absolute duty to pay maintenance and cure to a seaman injured on his vessel.

Plaintiff's physical, mental and financial well-being has been damaged by the vessel owner's failure to pay maintenance and cure.

5.03   At the time of the incident complained of, Plaintiff was a seaman who was injured in the course and scope of his employment of the service of the vessel.  As such, the Jones Act employer owes him a duty to pay maintenance and cure.

5.04   A seaman may bring a claim of punitive damages for the willful and wanton disregard of the maintenance and cure obligation.  The Jones Act employer has failed to provide the appropriate maintenance and cure benefits owed to Plaintiff.  Further, the Jones Act employer is in willful violation of its duty owed to Plaintiff and damages for aggravation, and punitive damages, are hereby sought.

## VI.
## FMLA INTERFERENCE AND RETALIATION

6.01   This action arises in part under 29 USC Sec. 2614(a)(1), (2) and 29 USC Sec. 2615(a)(1),(2) as Plaintiff's rights under the FMLA were interfered with by the Defendants and as the Defendants discriminated against/retaliated against him for requesting FMLA leave.

6.02   Defendants violated the FMLA by terminating Plaintiff's employment as a result of his request for FMLA leave and for failing to return him to work following his FMLA leave.

6.03   The above actions interfered with, restrained and denied Plaintiff his rights under the FMLA.

6.04   The actions above were discrimination and in retaliation for Plaintiff requesting FMLA leave and for asserting his rights under the FMLA.

## VII.
## SEXUAL HARRASSMENT/GENDER DISCRIMINATION/RETALIATION
## [Title VII and Chapter 21 Texas Labor Code]

7.01   Plaintiff was targeted for sexual harassment and then retaliated against by Defendants once he reported the harassment, hostile environment and discrimination.

7.02   By its acts and omissions alleged above, Defendants intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected his status as an employee, and then terminated his employment on the basis of Plaintiff 's complaint/reporting, in violation of Title VII and the Texas Labor Code.

7.03   As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer damages as set out below.

## VIII.
## OTHER LEGAL ASSERTIONS

8.01   In the occurrence made the basis of this suit, Plaintiff alleges the Noble Defendants, by the use of US laws as to Donica's FMLA and other terms of his employment, as well as their own assertion and use of US laws and being traded on US national exchanges and doing business in the United States are estopped from denying the application of US Laws in this matter.

8.02   Plaintiff asserts joint employer status with all Noble Defendants.

8.03   Plaintiff asserts joint and integrated enterprise with all Noble Defendants.

8.04   Plaintiff asserts that the Noble Defendants are vicariously liable for the acts of their employees and supervisors as well as for the acts of all persons subject to their control.

8.05   Plaintiff asserts the application of the "cat's paw" doctrine.

8.06   Plaintiff asserts that the Noble Defendants are estopped from denying that the actions of Gomez and Soler were sexual harassment by virtue of the Noble Defendants' admission of such to the Plaintiff and others.

## IX.
## DAMAGES

9.01   In the occurrence made the basis of this suit, Plaintiff sustained severe bodily and psychological injuries.  By reason of these injuries and the damages flowing in law therefrom, this suit is maintained.

9.02   Because of the nature and severity of the injuries sustained, Plaintiff has sustained physical pain and mental anguish and in reasonable probability he will continue to suffer physical pain and mental anguish in the future.  At the time of the occurrence made the basis of this suit, Plaintiff was a healthy, able-bodied working man.

9.03   Because of the occurrence in question, Plaintiff has sustained injuries that have caused him to sustain a loss of earnings and wage earning capacity and household services in the past and this condition will exist into the future.

9.04   Because of the nature and severity of the injuries he sustained, Plaintiff has required medical treatment in the past and in reasonable probability will require other and additional medical treatment in the future.  Plaintiff also seeks as damages, charges for such medical treatment that have been made in the past and those which will, in reasonable probability, be made in the future.

9.05   Pleading further, to the extent that Plaintiff may be entitled to exemplary damages for his Jones Act employer's failure to timely investigate and pay maintenance and cure, Plaintiff seeks such damages.

9.06   Plaintiff has also been damaged under the FMLA and is therefore entitled to the following as damages:

   a.   wages and benefits (front and back);
   b.   reasonable and necessary attorneys' fees, expenses and costs of court;

  c. Liquidated damages equal to the sum of lost wages/benefits and interest.

9.07 Plaintiff has also been damaged by harassment, discrimination and retaliation and is therefore entitled to the following as damages:

  a. wages and benefits (front and back);
  b. bonuses, compensation, employment benefits, career path opportunities, and expenses
  c. reasonable and necessary attorneys' fees, expenses and costs of court as provided for by 42 U.S.C. § 2000e-5(k);
  d. Pre- and Post-judgment interest at the highest legal rate;
  e. As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial, and
  f. In acting as alleged above, Defendants acted maliciously, fraudulently, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendants in amounts to be proved at trial.

## X.
## PREJUDGMENT AND POSTJUDGMENT INTEREST

10.01 Plaintiff would additionally say and show that he is entitled to recovery of pre-judgment and post-judgment interest in accordance with law and equity as part of his damages herein and your Plaintiff here and now sues specifically for recovery of pre-judgment and post-judgment interest as provided by law.

## XI.
## JURY DEMAND

11.01 Plaintiff requests a jury in this case.

## XII.
## AD DAMNUM

12.01 WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon notice and hearing that judgment be entered in his favor and against Defendants for general and compensatory damages; exemplary and punitive damages; and pre-judgment and post-judgment interest as allowed by law. Plaintiff further requests all equitable relief allowed under law.

Respectfully submitted,

*/s/ Charles H. Peckham*

_____
Charles H. Peckham
TBN: 15704900
FBN: 15770
cpeckham@pmlaw-us.com

Mary A. Martin
TBN:  00797280
FBN:  12272
mmartin@pmlaw-us.com

PECKHAM MARTIN, PLLC
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas  77057
(713) 574-9044
(713) 493-2255 – facsimile

THE ZWERNEMANN LAW FIRM

Allen H. Zwernemann
State Bar No. 24034755
F.I.D. No. 2851120
6363 Woodway, Suite 300
Houston, Texas 77057
tel:  (281) 221-7168
fax: (281) 783-4247
e-mail: az@azlf.com

**COUNSEL FOR PLAINTIFF**